DOROTHY F. GOULD, Appellant, Respondent, v. TRAVELERS INSURANCE COMPANY, Respondent, Appellant.

First Department, July 2, 1943.

*Lawrence S. Timen,* attorney (*Milton A. Pearl* with him on the brief), for appellant-respondent.

*Bernard J. McGlinn* of counsel (*Louis P. Galli* and *William J. Moran* with him on the brief), for respondent-appellant.

CALLAHAN, J. The question presented upon these appeals is whether the proceeds of two life insurance policies were subject to the provisions of certain trust agreements, or whether plaintiff (insured's widow) was entitled to such proceeds outright. The facts have been stipulated by the parties.

Concededly plaintiff was originally named the sole beneficiary of both policies. Certain negotiations were carried on by correspondence between the insured, who then resided in Seattle,

Washington, and the insurance company, which had its main office in Hartford, Connecticut. The purpose of these negotiations was to change the provisions of the policies so that instead of being payable in a lump sum they would be payable in installments known as monthly income payments to insured's wife if she survived the insured, and to the surviving children of insured in the event the wife predeceased the insured or in the event that she died without having exhausted the guaranteed number of income payments.

To carry out the plan for income payments the company drew up, or intended to draw up, two " change of beneficiary " forms dated March 23, 1932, naming plaintiff beneficiary if living at insured's death; otherwise, naming the children as beneficiaries in equal shares. At the same time the company drew up two proposed agreements which were dated March 24, 1932, providing for the payment of the proceeds of the policies to the company, to be held in trust, with monthly life income payments to plaintiff. If plaintiff died after receiving one, and before receiving all guaranteed payments, the remainder of the installment payments were to be made to the children. If plaintiff died before receiving any payments the children were to receive the income payments up to age twenty-seven, when lump sum payments were to be made to them.

The two trust agreements, and a " change of beneficiary " form relating to one of the policies were mailed by the company to its Seattle office for execution by the insured. Through error the " change of beneficiary " form relating to the second policy was not sent out at the same time. It is clear, however, from the correspondence that the parties intended to have the " change of beneficiary" forms and the trust agreements as to each policy executed as a part of a continuous transaction consisting of two steps occurring in that order. The " change of beneficiary " forms were intentionally dated a date ahead of the trust agreements so that the transactions would appear to have occurred in that sequence. Defendant's representative in Seattle procured insured's signature to the one " change of beneficiary " form which had been forwarded, and then returned it to the company's home office with a letter dated April 6, 1932, which contained an inquiry as to the whereabouts of the second " change of beneficiary " form. This letter was duly received at the home office of defendant, and on April 15, 1932, defendant indorsed its consent on the change of beneficiary form. The insured had also executed the two trust agreements, retaining copies of the same, and returning the originals to the company in a second letter, also dated April 6, 1932, which likewise con-

tained an inquiry as to the second " change of beneficiary " form.

The letters of April 6, 1932, were received by the home office, which then prepared and sent to Seattle a " change of beneficiary " form covering the second policy. This form was also dated March 23, 1932, clearly showing the intention to have the same executed as of the original date, which was a day earlier than the date of the trust agreement relating to that policy. This second " change of beneficiary " form was actually received by the insured in Seattle on or about May 14, 1932. At least it was returned to the company in Hartford in a letter dated May 14, 1932, with the date " March 23, 1932 " unaltered in the document. The company duly received this form and indorsed its consent thereon on May 20, 1932.

The change of beneficiary forms contained a clause revoking any previous designation of beneficiary which the insured had made. Each policy contained a provision that any change of beneficiary was " to take effect only when such change and the written consent of the Company thereto are indorsed upon the contract." It is because of this clause and the acceptance of the " change of beneficiary " form by the company after the execution of the trust agreements that plaintiff claims that she is entitled to the proceeds of each policy in one lump sum payment.

This would be so if the change of beneficiary were in fact a transaction intending to revoke the trust agreements, for, standing alone, the " change of beneficiary " form made the insurance payable to plaintiff, if living, on insured's death, and the children's interest was contingent upon their mother's predeceasing insured.

We deem, however, that the intention of the parties should control. There can be no doubt that the intention here was to have the trust agreements continued in effect despite the later execution of the second beneficiary form, and despite the fact that both " change of beneficiary " forms were accepted by the company subsequent to the execution of the trust agreements.

It is clear that the reason that the trust agreements were dated a day later than the " change of beneficiary " forms was to have them effective in the order of their nominal dating, and not in the order of their execution. The parties thus showed their intention to provide that the " change of beneficiary " forms were to be construed as having been executed on March 23rd, and the trust agreements as having been executed on March

24, 1932, irrespective of the date of their actual execution, or of the dates and in'dorsements of the consents thereon.

The revocation clauses in the " change of beneficiary " forms were thus intended to revoke only those designations made previous to March 23, 1932. They in no way affected the trust agreements. The intention of the parties was clearly to the contrary. It was competent for the parties to agree that the effective date should be one prior to the actual date of execution of the documents. (*Mutual Life Ins. Co.* v. *Hurni Co.,* 263 U. S. 167; *Glens Falls Portland Cement Co.* v. *Van Wirt Const. Co.,* 225 App. Div. 159.) The provision in the policy that the " change of beneficiary " was to take effect when the written consent of the company was indorsed on the contract, was solely for the benefit of the insurance company. It could be waived by the company. (*Matter of Chatham Phenix National Bank,* 232 App. Div. 598; *Rothstone* v. *Norton,* 231 App. Div. 59, affd. 256 N. Y. 601.) Here the company is asserting no claim based on the later date of its acceptance. It is thus, in effect, waiving the requirement of its written approval as a condition precedent to the change of beneficiary form becoming effective.

In addition to the correspondence and the documents in this case which afford overwhelming evidence of the intention of the parties, we have here a practical construction by them of their agreements. Not only was there no assertion by the insured during the years that elapsed between the time of the execution of the trust agreements and his death that said trust agreements were not to be deemed effective, but after insured's death plaintiff accepted monthly income payments under the trust agreements for upwards of three years. We find that the trust agreements continue to be binding contracts.

This construction of the contracts makes it unnecessary for us to consider the other issues referred to by Special Term.

The order denying plaintiff's motion for partial summary judgment should be affirmed, with ten dollars costs and disbursements to the defendant, and the order denying defendant's cross motion for summary judgment should be reversed, with ten dollars costs and disbursements, and said motion granted.

MARTIN, P. J., TOWNLEY, DORE and COHN, JJ., concur.

Order, denying plaintiff's motion for partial summary judgment, unanimously affirmed, with ten dollars costs and disbursements to the defendant. Order, denying defendant's cross motion for summary judgment, unanimously reversed, with ten dollars costs and disbursements to the defendant and said motion granted.